UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
CRAIG FRIEDMAN, Individually and on : Civil Action No. 1:16-CV-03912-JMF
Behalf of All Others Similarly Situated, :
: <u>CLASS ACTION</u>
Plaintiff, :
:
: REPLY MEMORANDUM OF LAW IN
vs. : FURTHER SUPPORT OF LEAD
: PLAINTIFFS' MOTION FOR RELIEF
ENDO INTERNATIONAL PLC, et al., : FROM THE JUDGMENT AND FOR LEAVE
: TO AMEND
Defendants. :
:
---------------------------------------------------------------x

## TABLE OF CONTENTS

**Page**

I. ARGUMENT ..........................................................................................................................1

    A. Plaintiffs Have Identified a Clear Error of Law ........................................................1

    B. Plaintiffs Have Satisfied Rule 15's Requirements for Amendment ........................3

        1. Plaintiffs Did Not Delay in Seeking Leave to Amend, and Amendment Would Not Unduly Prejudice Defendants ..............................3

        2. Plaintiffs' Amendment Would Not Be Futile .............................................5

            a. Defendants' Statements Regarding the Integration of Par and Qualitest Constitute Actionable Misrepresentations .................5

            b. Defendants Were Obligated to Disclose Their Plans to Abandon Qualitest's Successful High-Volume, Low-Margin Commodities Business Model in Favor of Par's Low-Volume, High-Margin Boutique Model ..................................6

            c. Defendants' Miscellaneous Attacks on the PFAC Lack Merit ........................................................................................................8

II. CONCLUSION .....................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Addison v. Reitman Blacktop, Inc.*,
  283 F.R.D. 74 (E.D.N.Y. 2011) ..................................................................................................4

*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016) ........................................................................................4

*Babyrev v. Lanotte*,
  2018 WL 388850
  (S.D.N.Y. Jan. 11, 2018) ............................................................................................................2

*Cresci v. Mohawk Valley Cmty. Coll.*,
  693 Fed. Appx. 21 (2d Cir. 2017) ..........................................................................................1, 2

*Dilworth v. Goldberg*,
  914 F. Supp. 2d 433 (S.D.N.Y. 2012) ........................................................................................4

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017) .........................................................................................................3

*Farkas v. Ellis*,
  783 F. Supp. 830 (S.D.N.Y. 1992) .........................................................................................2, 3

*Friedman v. Endo Int'l PLC*,
  2018 WL 446189
  (S.D.N.Y. Jan. 16, 2018) ............................................................................................................7

*Fries v. Northern Oil & Gas, Inc.*,
  2018 WL 388915
  (S.D.N.Y. Jan. 11, 2018) ............................................................................................................2

*In re Canandaigua Sec. Litig.*,
  944 F. Supp. 1202 ......................................................................................................................7

*In re Salix Pharm., Ltd.*,
  2016 WL 1629341
  (S.D.N.Y. Apr. 22, 2016) ............................................................................................................9

*In re Salomon Analyst Winstar Litig.*,
  2006 WL 510526
  (S.D.N.Y. Feb. 28, 2006) ............................................................................................................4

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .......................................................................................................7

**Page**

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011) ..................................................................................9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2015) ..............................................................................................................2

*McMahon & Co. v. Warehouse Entm't, Inc.*,
   900 F.2d 576 (2d Cir. 1990) .................................................................................................5

*Munafo v. Metro. Transp. Auth.*,
   381 F.3d 99 (2d Cir. 2004) ...................................................................................................1

*Perez v. Higher One Holdings, Inc.*,
   2017 WL 4246775
   (D. Conn. Sept. 27, 2017) ....................................................................................................5

*Perez v. MVNBC Corp.*,
   2016 WL 6996179
   (S.D.N.Y. Nov. 29, 2016) .....................................................................................................4

*San Leandro Emergency Medical Group Profit Sharing Plan v.*
   *Philip Morris Cos.*,
   75 F.3d 801 (2d Cir. 2016) ...................................................................................................7

*Scott v. Gen. Motors Co.*,
   605 Fed. App'x 52 (2d Cir. 2015) ........................................................................................7

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
   921 F.2d 409 (2d Cir. 1990) .................................................................................................4

*Underwood v. Roswell Park Cancer Inst.*,
   2017 WL 1593445
   (W.D.N.Y. May 2, 2017) .....................................................................................................4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 15 ..............................................................................................................................3, 4
   Rule 59(e) ...................................................................................................................1, 2, 3
   Rule 60(b) ............................................................................................................................3

Lead Plaintiffs respectfully submit this reply memorandum of law in further support of their motion for relief from the judgment and for leave to file the PFAC.[1]

## I.   ARGUMENT

### A.   Plaintiffs Have Identified a Clear Error of Law

Defendants acknowledge that district courts may grant a Rule 59(e) motion when the movant demonstrates the need to correct a clear error of law.  *See* Def. Mem. at 6; *see also Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).  Although Defendants contend that Plaintiffs have not satisfied this standard, *see* Def. Mem. at 6-7, Plaintiffs have demonstrated that the Court erred in deciding the following question in the affirmative:

> May a court properly dismiss a complaint with prejudice where, as here: (i) Plaintiffs were permitted to amend their second amended complaint (the "SAC") after Defendants moved to dismiss, but before the Court issued a decision addressing the adequacy of Plaintiffs' allegations; (ii) Plaintiffs properly requested leave to amend in opposing Defendants' subsequent motion to dismiss the TAC; and (iii) upon dismissal of TAC in a written opinion, Plaintiffs timely submitted the PFAC, detailing how they intended to cure the pleading deficiencies identified by the Court.

Because governing Second Circuit authority would permit amendment in these circumstances, there has been a clear error of law in denying the requested relief.

The Second Circuit recently stated, for example, that "[t]he proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient."  *Cresci v. Mohawk Valley Cmty. Coll.*, 693 Fed. Appx. 21, 25 (2d Cir. 2017).  Thus, a district court "exceed[s] the bounds of its discretion" by dismissing a

---

[1]   All capitalized terms not otherwise defined herein have the same meaning as in Plaintiffs' opening memorandum of law (ECF No. 90).  "¶" and "¶¶"refer to paragraphs of the PFAC.  "Def. Mem." refers to Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion for Relief from the Judgment and for Leave to Amend (ECF No. 94).  "Pl. Mem." refers to the Memorandum of Law in Support of Lead Plaintiffs' Motion for Relief from the Judgment and for Leave to Amend (ECF No. 90).  In quoted material, internal quotation marks and citations are omitted, and emphasis is added, unless otherwise indicated.

complaint with prejudice before giving a plaintiff the opportunity to cure the pleading deficiencies identified in the court's ruling. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2015). It is not enough to give the plaintiff an opportunity to amend after a preview of the defendants' motion to dismiss. *Id.* at 190 (requiring plaintiffs to decide whether to file an amended complaint before a decision on defendant's motion to dismiss "presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead").

Courts in this district routinely cite *Loreley* for the proposition that dismissing claims with prejudice in the absence of a ruling identifying the pleading defects of those claims is improper, even if the plaintiff has previously been permitted to amend before the ruling. *See, e.g.*, *Babyrev v. Lanotte*, 2018 WL 388850, at *8 (S.D.N.Y. Jan. 11, 2018) ("[W]hile the Court has already granted Plaintiff the opportunity to amend his original Complaint, it was not in the context of a motion to dismiss, and the Court has therefore not provided guidance as to how his claims may be adequately made."); *Fries v. Northern Oil & Gas, Inc.*, 2018 WL 388915, at *11 (S.D.N.Y. Jan. 11, 2018) ("As Plaintiff has not previously had the benefit of a ruling highlighting the precise defects of its complaint, he will be given the opportunity to replead.").

Although the Court permitted Plaintiffs to amend the SAC in response to Defendants' first motion to dismiss, Plaintiffs did not have the benefit of a ruling in preparing the TAC. Under these circumstances, the Court's dismissal of the TAC with prejudice was inconsistent with *Loreley* and *Cresci* and, respectfully, improper. Plaintiffs have, therefore, satisfied the "strict" standard for reconsideration under Rule 59(e). *Farkas v. Ellis*, 783 F. Supp. 830

(S.D.N.Y. 1992).[2]

### B. Plaintiffs Have Satisfied Rule 15's Requirements for Amendment

While Rules 59(e) and 60(b) govern whether the Court will grant relief from the judgment, Rule 15 governs whether the requested amendment should be permitted. Because: (1) Plaintiffs did not engage in undue delay; (2) Defendants would not be unduly prejudiced; and (3) amendment would not be futile, amendment should be granted.

#### 1. Plaintiffs Did Not Delay in Seeking Leave to Amend, and Amendment Would Not Unduly Prejudice Defendants

The Court dismissed the TAC on January 16, 2018, at the same time denying Plaintiffs' timely request – properly made in their opposition to the motion to dismiss[3] – for leave to amend. Judgment was entered on January 17, 2018, and Plaintiffs renewed their request for leave to amend in this motion filed twenty-eight days later, on February 14, 2018, in compliance with Rule 59(e).

Defendants nevertheless argue that the PFAC is the "result of undue delay" because Plaintiffs' new allegations are based on information that has been publicly available since 2015.

---

[2] Defendants cite *F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017) for the proposition that a district court can properly dismiss a claim with prejudice if it provides plaintiff with an opportunity to amend before the motion is decided. Def. Mem. at 8. In *F5 Capital*, however, the Second Circuit affirmed the dismissal of the complaint with prejudice based on the district court's determination that "any amendment would be futile." *F5 Capital*, 856 F.3d at 89. The Second Circuit emphasized that the plaintiff had failed, "in its own briefing on the motion [to dismiss], or by motion for leave to amend after the district court dismissed the case, to explain how it proposed to cure its defects." *Id.* at 90. Although the plaintiff had also challenged the court's individual rules, which stated that plaintiffs had the option of repleading once upon receipt of a defendant's motion to dismiss, the Second Circuit left the propriety of that rule undecided. *Id.* at 89. Plaintiffs here did not have the advantage of full briefing and have explained, through this motion and the attached PFAC, precisely how they intend to cure the defects identified by the Court such that amendment would not be futile.

[3] *F5 Capital*, 856 F.3d at 89 ("the informality of the request [to amend] is not ordinarily a basis to deny leave to amend").

- 3 -

Def. Mem. at 9-10. The fact that Plaintiffs could have moved to amend at an earlier time is, however, "insufficient to demonstrate undue delay." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). That is especially true where, as here, Plaintiffs sought leave to amend in the event of a negative decision on a motion to dismiss, *see Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012), and the parties have been engaged in motion practice during the pendency of the lawsuit. *See Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 80 (E.D.N.Y. 2011) (no undue delay where plaintiff sought to amend a year after the complaint was filed and the parties were engaged in motion practice during that period); *see also Underwood v. Roswell Park Cancer Inst.*, 2017 WL 1593445, at *3-4 (W.D.N.Y. May 2, 2017) (no undue delay where plaintiff moved to amend "less than two months" after the court granted defendant's motion to dismiss, even though the case had been filed more than two years before and plaintiff had knowledge of the facts in the second amended complaint at an earlier time).[4]

In any event, because Defendants have shown neither undue prejudice resulting from Plaintiffs' purported delay nor bad faith conduct by Plaintiffs, denial of leave to amend was inappropriate.[5] *See Perez v. MVNBC Corp.*, 2016 WL 6996179, at *5 (S.D.N.Y. Nov. 29, 2016) ("[A] moving party's delay, absent bad faith or prejudice, is not a sufficient reason to deny a motion to amend.").

---

[4] The cases Defendants cite in support of their undue-delay argument involve plaintiffs who were abusing Rule 15, and are therefore inapposite. *See In re Salomon Analyst Winstar Litig.*, 2006 WL 510526, at *6 (S.D.N.Y. Feb. 28, 2006) (denying leave to amend where plaintiff sought to add allegations that directly contradicted its previous representations to the court); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (imputing lack of good faith where plaintiff waited nineteen months before moving to amend, and the history of the case suggested that the plaintiff's "decision not to plead the additional causes of action [in its original pleading] was a tactical one").

[5] Although Defendants assert in a heading that the amendments will "unduly prejudice defendants" (Def. Mem. at 9), they do not explain how that is so.

## 2. Plaintiffs' Amendment Would Not Be Futile

### a. Defendants' Statements Regarding the Integration of Par and Qualitest Constitute Actionable Misrepresentations

Defendants attack the PFAC on the ground that Defendants never used the exact phrase "merger of equals." Def. Mem. at 3-4, 10-11. But Plaintiffs' claims do not hinge on whether De Silva or Campanelli ever uttered that exact phrase. Instead, the totality of their statements during the Class Period, taken in the context of the Par acquisition, led investors to reasonably believe that Qualitest would continue its high-volume, low-margin business, while Par would continue its boutique focus on blockbuster pharmaceutical products. It was the magical "combination" of "Endo + Par," "two very complementary businesses" with "very few overlaps," that would result in a "transformational combination" that would cement Endo's place as a "top 5 generics player in the US." ¶¶40, 41, 45, 49, 62, 105, 110-111, 148-149. These and similar statements – made repeatedly during the Class Period – were designed to lead analysts and investors to believe that Qualitest and Par would operate side by side to transform Endo's corporate stature.[6] *See Perez v. Higher One Holdings, Inc.*, 2017 WL 4246775, at *4 (D. Conn. Sept. 27, 2017) (in analyzing the "[a]dequacy of [a] disclosure," "the question is 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor'") (quoting *McMahon & Co. v. Warehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990)).

Plaintiffs did not take Defendants' statements "out-of-context" by omitting the questions to which they were responding, as Defendants argue. Def. Mem. at 4 n.2, 11. It is hardly surprising that De Silva would pivot from specific analyst questions back to his essential talking point in support of the transaction – that "one of the compelling aspects of our transaction is that

---

[6] For examples of analyst reactions, *see* ¶¶52-53, 67.

our business and Partner's business are very complementary. Very, very few overlaps" (¶46), and that "our full intention is to make sure that we maintain the magic that both the Par teams and Qualitest's have created over the course of the last several years." ¶47. The specific subject of the question does not negate the general content of the answer.

Nor did De Silva's use of the word "transformational" communicate to investors that Qualitest was about to undergo fundamental structural changes. Def. Mem. at 11. As an initial matter, "reasonable investors" would *not* have anticipated substantial changes at *Qualitest* – a division of the *acquiring* company, Endo – as Defendants suggest. *Id.* at 12. Rather, they would have expected changes at the *target* company, Par. More importantly, De Silva himself repeatedly made clear that he was addressing a transformation of *scale*, not one of business model. On the September 28, 2015 conference call with investors, for example, he stated: "[T]he combination of Endo and Par is transformational for our company *and enhances scale* in a number of measures." ¶146. Similarly, he stated: "[T]he combination of Qualitest and Par is transformational to our generics business as well. Together, they become a leader in specialty generics *with greater scale*." *Id.* Indeed, Defendants made many such statements, s*ee* ¶¶55, 63, 125-26, 135, 146, which did not go unnoticed. Numerous analysts reported that the Par acquisition would provide Endo with the "critical mass" and increased pipeline necessary to transform it into a top-5 generics powerhouse. *See, e.g.*, ¶¶40, 49, 53, 110, 114, 141.

Thus, the PFAC pleads affirmative misrepresentations.

### b. Defendants Were Obligated to Disclose Their Plans to Abandon Qualitest's Successful High-Volume, Low-Margin Commodities Business Model in Favor of Par's Low-Volume, High-Margin Boutique Model

In arguing against the existence of a duty to disclose changes to Qualitest's business model, Defendants ignore the "well-established" principle in this Circuit, cited in Plaintiffs'

- 6 -

opening memorandum of law, that "once a company speaks on an issue or topic, there is a duty to tell the whole truth, [e]ven when there is no existing independent duty to disclose information on the issue or topic." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016); *see generally* Pl. Mem. at 10.  And they do not address the merits of Plaintiffs' discussion of *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 2016), on which the Court relied in concluding Defendants had no disclosure obligation. *See generally* Def. Mem. at 12; Pl. Mem. at 10-12; *Endo*, 2018 WL 446189, at *6.  But even if the Court is disinclined to revisit these authorities, the PFAC pleads a new basis for this obligation: Item 303 of SEC Regulation S-K.  *See generally* ¶¶92-94.

Item 303 imposes an obligation on public companies to disclose known trends, events, or uncertainties, whether favorable or unfavorable.  Dramatic, long-term changes to a company's business strategies, such as Endo's decision to abandon Qualitest's highly lucrative, high-volume, low-margin strategy in favor of a low-volume, high-margin strategy, fall squarely within the ambit of known "trends," "events," or "uncertainties" that must be disclosed.  *See* ¶¶92-94; Pl. Mem. at 3, 10.

Defendants' assertion that Item 303 "does not impose an obligation to disclose specific business practices" is overly broad and inaccurate.  Def. Mem. at 13.  The cases cited by Defendants involve specific, short-term business tactics that could not be accurately characterized as "trends," "uncertainties," or "events."  *Cf. Scott v. Gen. Motors Co.*, 605 Fed. App'x 52 (2d Cir. 2015) (pre-IPO fraudulent revenue practices were not "known trends or uncertainties" that must be disclosed in Item 303); *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1212 (short-term competitive pricing policy "was not a 'trend or uncertainty' expected to materially impact on 'operations' or 'financial condition' within the ambit of [Item] 303").

By contrast, Endo's wholesale replacement of Qualitest's successful business model was far more than an ordinary accounting practice or marketing ploy. Immediately upon the completion of the Par acquisition, Endo terminated two key Qualitest sales executives, fired Qualitest's entire regional sales force, terminated business relationships with all retail pharmacies, abandoned tried-and-true pricing strategies, and entirely discontinued its low-margin products. ¶¶68-83. This undisclosed and anticipated transformation of Qualitest's entire business model easily qualifies as a known event, trend, or uncertainty required to be disclosed under Item 303.

Nor can Defendants successfully argue that these allegations constitute fraud by hindsight. *See, e.g.*, Def. Mem. at 5. Defendants betrayed their extensive, early integration planning on the very first day of the Class Period, May 18, 2015, when they first announced the proposed Par acquisition. That day they disclosed their expectation that the transaction would result in "$175 million in operational and tax synergies" (the efficiencies that result from the transaction). ¶42. That these expected synergies included – from the very start – Defendants' already planned transformation of the Qualitest business model is beyond dispute. Even *after* the transaction was completed in late September 2015 (¶58), Defendants continued to cite the same figure for synergies – $175 million – for *months*. ¶¶42, 84-86, 102, 138, 156, 170, 178. That those expected synergies remained unchanged long after the completion of the transaction demonstrates that Defendants' post-acquisition overhaul of Qualitest was an event planned and known to Defendants all along.

### c.     Defendants' Miscellaneous Attacks on the PFAC Lack Merit

In support of their futility argument, Defendants contend that most, if not all, of the statements alleged in the PFAC are inactionable forward-looking statements, opinion, or puffery. Def. Mem. at 13-15. But Plaintiffs' essential claim is that Defendants, through their statements

- 8 -

and omissions, misled investors about their present intention – from the very start of the Class Period – to drastically alter Qualitest's successful business model. None of these three defenses has any application to this essential claim. A statement or omission misrepresenting Defendants' present intention to fundamentally change Qualitest's successful business model is neither forward-looking, inconsequential (puffery), nor opinion. It is a misstatement or omission of current material fact – the very thing the federal securities laws are intended to police.[7]

A single example makes the point. On May 18, 2015, De Silva stated: "[T]he industrial logic of our combination of Qualitest with Par, it's extraordinarily clear. ***These are two very complementary businesses***. ***We are bringing two very successful businesses together*** that have both grown double digits for an extended period of time, so ***we are combining the two Companies, both coming from a position of strength***." ¶45. Further: "*[O]ur full intention is to make sure that we maintain the magic that both the Par teams and Qualitest's have created over the course of the last several years*." ¶47. These statements are not forward looking, do not express an opinion, and are not puffery; rather, they hit at the very heart of the case.

To distract from this central deception, Defendants ask the Court to focus on individual words and phrases rather than the whole meaning. In their puffery exhibit, for example, they highlight the following phrases from ¶45 (quoted above): "extraordinarily clear," "very complementary," "grown double digits for an extended period of time," and "coming from a position of strength." *See* Exh. 3 to Declaration of Jeff G. Hammel, executed on March 9, 2018 (ECF No. 95), at 1. But whether these isolated phrases by themselves can constitute puffery is

---

[7] *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011) ("statements about present or historical facts, whose accuracy can be determined at the time they were made, are not forward-looking statements within the PSLRA's safe harbor"); *In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *9 (S.D.N.Y. Apr. 22, 2016) ("[t]he safe harbor does not protect material omissions").

beside the point: De Silva's statement, taken as a whole, is an actionable statement of material present fact.

Similarly, Defendants try to divert the Court's attention from the true import of their repeated statement that they expected $175 million in synergies to result from the acquisition, arguing that this statement is forward-looking and therefore inactionable. *See* Def. Mem. at 15. But Plaintiffs do not allege that this statement is false or misleading. Rather, they cite it as unequivocal evidence that Defendants intended, from the beginning of the Class Period, to change Qualitest's business model immediately upon the completion of the transaction in September 2015. And they cite this statement – which Defendants continued to make for months after the acquisition closed – as evidence of their scienter from day one: Defendants fully intended to make the changes in question from the start, but both misrepresented and failed to disclose that intention.[8]

## II. CONCLUSION

For the foregoing reasons, as well as those in Plaintiffs' opening memorandum of law, Plaintiffs respectfully request that the Court grant the relief requested in the motion.

DATED:  March 23, 2018

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARK T. MILLKEY
VINCENT M. SERRA
MOSHE O. BOROOSAN

*/s/ Mark T. Millkey*
MARK T. MILLKEY

---

[8] Even if the Court were to disregard the unequivocal meaning of Defendants' synergies representations, the PFAC pleads – based upon the reports of multiple former employees – that Defendants instituted the changes in question *immediately* upon the completion of the acquisition in September 2015, establishing their scienter at that point at the latest. *See* ¶¶68-83.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mmillkey@rgrdlaw.com
vserra@rgrdlaw.com
mboroosan@rgrdlaw.com

*Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2018, I caused a true and correct copy of the REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR RELIEF FROM THE JUDGMENT AND FOR LEAVE TO AMEND to be electronically transmitted to the Clerk of Court using the CM/ECF System for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

*/s/ Mark T. Millkey*
MARK T. MILLKEY