Case 1:16-cv-03912-JMF   Document 99   Filed 05/20/19   Page 1 of 5

**MANDATE**

18-1669
Steamfitters' Indus. Pension Fund v. Endo Int'l, PLC

N.Y.S.D. Case #
16-cv-3912(JMF)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 29th day of April, two thousand nineteen.

Present:   AMALYA L. KEARSE,
           RALPH K. WINTER,
           ROSEMARY S. POOLER,
                     *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 20 2019

_____

THE STEAMFITTERS' INDUSTRY PENSION FUND,
THE STEAMFITTERS' INDUSTRY SECURITY BENEFIT
FUND,

                     *Plaintiffs-Appellants*,

        v.                                                          18-1669-cv

ENDO INTERNATIONAL PLC, RAJIV KANISHKA
LIYANAARCHIE DE SILVA,
SUKETU P. UPADHYAY, PAUL CAMPANELLI,

                     *Defendants-Appellees*.[1]
_____

Appearing for Appellants:   Douglas Wilens, Robbins Geller Rudman & Dowd LLP (Samuel
                            H. Rudman, David A. Rosenfeld, Mark T. Millkey, *on the brief*),
                            Boca Raton, FL

---

[1] The Clerk of the Court is directed to amend the caption as above.

| | |
|---|---|
| Appearing for Appellees: | Roman Martinez, Latham & Watkins LLP (James E. Brandt, Jeff G. Hammel, Thomas Giblin, Benjamin W. Snyder, *on the brief*), Washington, D.C. |

Appeal from the United States District Court for the Southern District of New York (Furman, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

Appellants the Steamfitters' Industry Pension Fund and the Steamfitters' Industry Security Benefit Fund (the "Funds") appeal from the April 27, 2018, order of the United States District Court for the Southern District of New York (Furman, *J.*), denying their motions for relief from the district court's January 17, 2018, judgment pursuant to Rules 59(e) and 60(b)(6) of the Federal Rules of Civil Procedure and for leave to file a fourth amended complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See generally Friedman v. Endo Int'l PLC (Friedman II)*, No. 16 CV-3912 (JMF), 2018 WL 2021561 (S.D.N.Y. Apr. 27, 2018). The district court had previously dismissed the Funds' third amended securities fraud complaint against Endo International PLC ("Endo") and several of its past and present executives, Rajiv Kanishka Liyanaarchie De Silva, Suketu P. Upadhyay, and Paul Campanelli (collectively, "Defendants"). *See generally Friedman v. Endo Int'l PLC (Friedman I)*, 16 CV-3912 (JMF), 2018 WL 446189 (S.D.N.Y. Jan. 16, 2018). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

## I. Legal Standards

"We review denial of leave to amend under an 'abuse of discretion' standard." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). However, where, as here, a district court's "denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile," we review its decision de novo. *Id.*

"We assess futility as we would a motion to dismiss, determining whether the proposed complaint contains enough facts to state a claim to relief that is plausible on its face." *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (internal quotation marks omitted). "In making this determination, we consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (alteration in original) (internal quotation marks omitted).

In addition, a securities fraud plaintiff "must also satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ('PSLRA') and Rule 9(b) of the Federal Rules of Civil Procedure." *Ind. Pub. Ret. Sys.*, 818 F.3d at 92 (citation omitted). Those heightened standards require a complaint to "stat[e] with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).

## II. Leave to Amend Procedures

The Funds first argue that the district court employed improper leave to amend procedures by indicating that, because the Funds' motion for leave to amend came after the district court entered judgment, a "more exacting standard" should apply. *Friedman II*, 2018 WL 2021561, at *1-2. However, we need not decide whether the district court would have erred by applying such a standard because it did not do so. Instead of relying on a heightened leave to amend standard or the fact that it had previously given the Funds an opportunity to amend their complaint before ruling on Defendants' motion to dismiss, the district court explicitly stated that, "whether or not" it applied a "more exacting standard," the Funds' "motion falls short, as their proposed amendments are futile." *Id.* at *2; *see also id.* at *3 ("[B]ecause Plaintiffs' proposed Fourth Amended Complaint is futile, the Court will not grant leave to amend."). Futility is a proper reason for denying a motion for leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. Futility

The Funds next argue that the district court erred by holding that amendment was futile because their proposed fourth amended complaint still failed to state securities fraud claims under Section 10(b) and 20(a) of the Exchange Act. 15 U.S.C. §§ 78j(b), 78t(a). The Funds' proposed fourth amended complaint premises liability on alleged violations of SEC Rule 10b-5, 17 C.F.R. § 240.10b-5(b), and Item 303 of SEC Regulation S-K, 17 C.F.R § 229.303. The Funds' theory is, in sum, that Defendants left investors with the false impression that, after acquiring Par Pharmaceutical Holdings Inc. ("Par"), Endo would not be making any drastic changes to its generics business, Qualitest Pharmaceuticals ("Qualitest"). However, according to the Funds, Defendants executed a secret plan to transform Endo's generics business, abandoning Qualitest's business model in favor of Par's.

### A. Rule 10b-5

As relevant here, Rule 10b-5 makes it unlawful "[1] [t]o make any untrue statement of a material fact or [2] to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). "[T]o fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231 32 (1988) (internal quotation marks omitted); *see also United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015) ("A misrepresentation is material under Section 10(b) where there is a substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision." (alternation in original) (internal quotation marks omitted)). Section "10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Nevertheless, a duty to disclose may exist under Rule 10b-5 where the failure to do so would make a corporate statement a "half-truth"—a "statement[] that [is] misleading under the second

3

prong of Rule 10b-5 by virtue of what [it] omit[s] to disclose." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239-40 (2d Cir. 2016).

Here, Defendants signaled all along that they planned significant changes at Qualitest. Although the Funds emphasize Defendants' use of the word "complementary" to suggest that they represented to investors that Endo would continue to operate Qualitest and Par in parallel, Endo, in fact, abandoned the Qualitest name altogether, instead renaming its generics business Par Pharmaceutical, an Endo International Company. Moreover, when Endo announced its acquisition of Par, it also told investors that Par's CEO, Campanelli, would lead the new combined generics business. And in the first quarterly report it filed after closing the Par deal, Endo disclosed that it was restructuring its generics business. Endo Int'l PLC, Quarterly Report (Form 10-Q), at 9 (Nov. 9, 2015).

Additionally, while the Funds concede that Defendants repeatedly used the word "transformational" to describe the Par acquisition, they argue that Defendants only used that term in reference to the increased size and scope of Endo's generics business. However, Defendants also repeatedly used the word "transformational" to describe the changes the Par acquisition would have on Endo's generics business model. For example, in a May 18, 2015, investor presentation, Endo described the Par acquisition as an opportunity to "[t]ransform [its] operating model." Endo Int'l plc, *Par Pharmaceutical Acquisition* 6 (May 18, 2015), *available at* http://investor.endo.com/static-files/255eb5dc-a091-4731-be24-99088015ae06. That presentation also noted that the transaction would "[t]ransform [Endo's] Gx [generics] business." *Id.* at 7. And in a May 18, 2015, press release, Endo similarly stated that the acquisition would "transform[] its operating model to maximize growth potential and cash flow generation." Endo Int'l PLC, Current Report (Form 8-K) ex. 99.1, at 4 (May 18, 2015).

Moreover, after Endo announced the Par acquisition, it continued to convey to investors that it did not intend to retain Qualitest's low-margin business model, instead favoring Par's focus on specialized, high barrier-to-entry products. For instance, during an August 10, 2015, conference call, De Silva told investors that Endo had "a very clear view that the true future at least for growth oriented companies in the U.S. Generics is around specialty generics, higher barrier to entry products and that is going to continue to be hard on the commodities side. For us what is really encouraging is that this is exactly why we are acquiring Par . . . ." Thomson Reuters, *Edited Transcript, ENDP - Q2 2015 Endo International plc Earnings Conference Call* 15 (Aug 10, 2015), *available at* http://investor.endo.com/static-files/4f50a27a-7c10-4b18-9b84-b296089aa5e9. Once Endo consummated the transaction, it stated in a press release that the new combined entity would have "a focus on higher barrier-to-entry and first-to-market products." Endo Int'l PLC, Current Report (Form 8-K) ex. 99.1, at 1 (Sept. 28, 2015). In that press release, Campanelli also stated that he looked "forward to helping [Endo] realize the full potential of this new – and highly specialized – generics business." *Id.* at 2.

Finally, as the district court correctly observed, many of the statements to which the Funds attach significance are nothing more than puffery. *Friedman II*, 2018 WL 2021561, at *2. They are the sort of vague and optimistic "statements [that] are too general to cause a reasonable investor to rely upon them," and thus cannot serve as the basis for a securities fraud claim. *ECA & Local 134 IBEW Joint Pension Tr.*, 553 F.3d at 206. For example, no reasonable investor

4

would attach much meaning, if any, to the remark that Endo hoped to "maintain the magic" of Par and Qualitest, and they certainly would not rely on such statements. App'x at 49, 60, 64, 65.

In short, the Funds' proposed fourth amended complaint fails to plausibly allege that Defendants made any material misrepresentations—either by affirmative misstatement or by omission—in connection with the Par acquisition. In the absence of a plausible Rule 10b-5 violation, the district court correctly held that amendment would be futile.

### B. Item 303

"Item 303's affirmative duty to disclose in Form 10-Qs can serve as the basis for a securities fraud claim under Section 10(b)." *Stratte-McClure*, 776 F.3d at 101. In order to be a successful plaintiff, one must adequately allege both that a defendant violated Item 303 and that the violative omissions were material. *Id.* at 103. "According to the SEC's interpretive release regarding Item 303, disclosure [under Item 303] is necessary where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations." *Ind. Pub. Ret. Sys.*, 818 F.3d at 94 (alternation in original) (internal quotation marks omitted).

Here, the Funds' allegations fall short because the business strategy decision on which they rely is not the type of disclosure Item 303 requires. The SEC "has never gone so far as to require a company to announce its internal business strategies." *Stratte-McClure*, 776 F.3d at 105. We decline to do so now.

### C. Section 20(a)

To state a claim for so-called "control person liability" under Section 20(a), a plaintiff is required to establish, among other things, "a primary violation" of the securities laws. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (internal quotation marks omitted). The Funds have failed to do so; thus, they fail to state a claim under Section 20(a).

We have considered the remainder of the Funds' arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

5